UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 11-CV-113-OC-34TEM

DOMENICK CUTUGNO, an individual, and LINDA CUTUGNO, an individual, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

SECOND CHANCE JAI ALAI LLC, a Florida Corporation, JOSEPH JAMES COFFEY, an individual, and BRIAN MATTHEWS, an individual,

    Defendants.
_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants SECOND CHANCE JAI ALAI, LLC, JOSEPH COFFEY, and BRIAN MATTHEWS, through undersigned counsel, and file this response in opposition to Plaintiffs' Motion for Summary Judgment, and as grounds for their opposition state:

### PRELIMINARY STATEMENT

In the Preliminary Statement of the Plaintiffs' Motion for Summary Judgment, Plaintiffs state that "[t]hroughout the course of discovery, it is undisputed that the tip pool maintained and operated by the Defendant at all times during the Plaintiffs' employment was invalid and therefore illegal under the FLSA." (DE 53, p. 1). Defendants dispute this statement, and have done so since the inception of this lawsuit. In the initial Answer and Affirmative Defenses, Defendants denied that the tip pool was illegal. (DE 8). Defendants again denied that the tip pool was illegal in their Answers to the Second Amended Complaint. (DE 40, 48). Defendants

1

described the level of interaction with the customers of each person included in the tip pool in depositions and responses to interrogatories. To state that it is undisputed that the tip pool is illegal would in effect terminate this litigation; it is also absurd.

## STATEMENT OF MATERIAL FACTS

1. Undisputed for purposes of summary judgment.

2. Undisputed for purposes of summary judgment.

3. Undisputed for purposes of summary judgment.

4. Disputed. While Defendant's answer to Interrogatory #16 does state that floor managers are in charge of employees in the room, but it also states that they are responsible for the smooth running of the room, they distribute winnings to the players, seat players and run chips as well. (Defendants' Answer to Interrogatory #16; Deposition of C. Allen, pp. 25, 27; Deposition of B. Matthews, pp. 15, 30). Plaintiffs' self-serving affidavits regarding the function of floor managers are just that: self-serving. At deposition, both Plaintiffs testified that they saw floor managers and supervisors interacting with customers, helping seat customers, settling disputes, and opening tables. (Deposition of D. Cutugno, p. 24; Deposition of L. Cutugno, pp. 17-20).

5. Disputed. (See above references).

6. Disputed. While it is true that Defendants changed their tip pool after the result of Wajcman v. Investment Corp. of Palm Beach, Case No. 07-80912-CIV-HURLEY/HOPKINS, Plaintiffs mischaracterize the testimony of Brian Matthews.

7. Disputed. The facts of the Wajcman case are not part of the record of this matter, and can be distinguished from the facts of this matter. Specifically, the poker room in Wajcman

was at least double, and more likely triple, the size of the Ocala Poker Room. (Deposition of B. Matthews, p. 93).

8. Disputed. Tellers had more than *de minimus* interactions with the customers. In addition, there is a tip box located at the cage area where the tellers interacted with the customers. (Deposition of B. Matthews, p. 96; Deposition of D. Cutugno, p. 16; Deposition of L. Cutugno, p. 12; Deposition of C. Allen, p. 28). It stands to reason that if there is a tip box located at the teller windows, that tellers receive tips.

9. Disputed. The facts of the Department of Labor case are not part of the record of this matter, thus it is impossible to determine whether the cases are factually similar. Plaintiffs can not generalize that because tellers are not properly included in a tip pool in one location, they are therefore excluded state-wide.

10. Disputed. Sue Garrity was not considered the office manager by anyone but herself. (Deposition of V. Pernek, p. 8; Deposition of B. Matthews, pp. 53, 54, 65). Sue Garrity worked on the floor when the room was busy, during tournaments, or promotions. She would also fill in as a poker dealer. (Deposition of S. Garrity, pp. 12-14, 38-39; Deposition of C. Allen, pp. 26-27; Deposition of B. Matthews, p. 53; Deposition of V. Pernek, p. 10).

11. Disputed. Vault personnel had more than de minimus interaction with customers, and worked as chip runners, tellers, and at the podium as needed. (Deposition of V. Pernek, pp. 15, 22, 47, 50, 53).

## **MEMORANDUM OF LAW**

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). "For a court to find a genuine issue for trial, the non-moving party must establish, through the record presented to the court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor." Brother v. Tiger Partner, LLC, 331 F.Supp.2d 1368, 1371 (M.D. Fla. 2004); *citing* Cohen v. United Am. Bank, 83 F.3d 1347, 1349 (11th Cir. 1996).

In considering a motion for summary judgment, a court "views all of the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party." Brother, *supra*, *citing* Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir. 1993). Further, "if there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Lamb v. Charlotte County, 429 F.Supp.2d 1302, 1305 (M.D. Fla. 2006), *citing* Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

Here, Defendants have specifically contradicted each and every material allegation made by Plaintiffs. Further, the bulk of the "material facts" listed in Plaintiff's Motion for Summary Judgment are contained in the self-serving affidavits of the Plaintiffs. Affidavits must be made on personal knowledge, and must show that the affiant is competent to testify on the matters contained in the affidavit. Fed. R. Civ. P. 56(e). In this matter, the Plaintiffs both state that tellers offer no benefit to customers, and have very little interaction with the customers. However, each Plaintiff also testified that there is a tip box at the teller cage, and Domenick Cutugno testified that "[s]ometimes a player would cash out with a good size winning and feel they wanted to give the teller a tip, I guess." (Deposition of D. Cutugno, p. 16).

Domenick Cutugno lists the duties of the vault personnel in his affidavit, and further affirms that vault personnel had little interaction with the customers. However, in his deposition,

4

Mr. Cutugno was only able to testify about what he "believed" were the duties of vault personnel, and further stated that he "wasn't privy to the scene there." (Deposition of D. Cutugno, pp. 17-18). In fact, Mr. Cutugno testified that he did not know about the workings of the vault personnel and management, anything he would say regarding the powers of the vault manager would be "hearsay," and that he was not sure of Sue Garrity's job duties.

The information in the affidavits is directly contradicted by the testimony of Brian Matthews, Vicki Pernek, and sometimes even by the Plaintiffs themselves. As such, the affidavits should be discounted, because the Plaintiffs would not be competent to testify as to their contents.

Plaintiffs further rely heavily on the jury verdict that was reached in <u>Wajcman v. Investment Corp. of Palm Beach</u>, Case No. 07-80912-CIV-HURLEY/HOPKINS, stating that the entire <u>Wajcman</u> case was decided upon the customer interaction between the floor supervisors and the dealers, and further stating that <u>Wajcman</u> set forth "precedent regarding the illegality of including floor supervisors in a tip-pool. . . ." <u>Wajcman</u> does no such thing. Aside from the fact that <u>Wajcman</u> was decided by a jury in the Southern District, it is factually distinguishable from the case at bar. The Ocala Poker Room has approximately twenty tables, and is in Ocala. The Palm Beach Kennel Club Poker Room is the largest room in Florida, with sixty tables over two floors. The Palm Beach Kennel Club Poker Room takes in approximately $1.4 million a month; the Ocala Poker Room takes in approximately $200,000 to $300,000 a month. (Deposition of B. Matthews, p. 93). The duties of floor managers in Palm Beach are likely quite different from those of the floor managers at the Ocala Poker Room; to state that the jury verdict in <u>Wajcman</u> should have any impact on this case is naïve at best.

It is true that Brian Matthews testified that the Ocala Poker Room determined to discontinue including floor managers in the tip pool if the Palm Beach Kennel Club lost the <u>Wajcman</u> case. However it was not because "Defendants recognized the illegality of including floor supervisors in a tip-pool. . . ." Rather, it was in an attempt to avoid lawsuits like the instant matter. (Affidavit of Brian Matthews, attached hereto as Exhibit A). In his discussions with the Palm Beach poker room manager, the Palm Beach manager felt he was in the right. (Deposition of B. Matthews, p. 80).

As stated above, there is a conflict in the testimony regarding the level of interaction the tellers have with the customers. However, given the fact that a tip box is located at the teller cage, it is clear that tellers are tipped employees. The recent decision by the Department of Labor regarding facilities in Naples and Miami are inapposite and of no moment to the case at bar.

Regarding Sue Garrity and her position of "office manager," there is a clear conflict in the testimony (even in her own deposition) about her level of interaction with the customers. Plaintiffs state that Sue Garrity was not listed in the Interrogatory Responses as the "office manager." This is true, mainly because she was not the office manager. (See above citations to depositions of B. Matthews and V. Pernek).

Regarding vault personnel, there is conflict in the evidence regarding the level of interaction with the customers. Of course vault personnel's primary duty is to work in the vault. However, as stated above, vault personnel work as chip runners, tellers, and at the podium. Vicki Pernek testified that she interacts with customers "[a]ll the time. All the time. When they come in, when they come to the teller window, when they're at the podium, when they're in the

hallway, they'll come up and talk to you. A lot of them I know on a first name basis." (Deposition of V. Pernek, p. 53).

However, and regardless of the level of interaction with the customers, Plaintiffs have not presented any evidence supporting invalidation of the tip pool. In Turner v. Millennium Park Joint Venture, LLC, 767 F. Supp. 2d 951 (N.D. Ill. 2011), the court refused to invalidate a tip pool that included a "silverware roller." The Turner court rejected the plaintiff's contention that only employees who had direct customer contact could participate in a tip pool. Rather, the court ruled that an employee could participate in a tip pool "if that employee receives tips, either directly from customers or from other employees who themselves receive direct customer tips, on a regular basis." Id., at 954. While the arrangement in Turner was voluntary, the court held that the plaintiff's consent to it was not required to uphold the tip pool, given the fact that the arrangement was already in place when the plaintiff was hired. The Turner court stated:

> In read world terms it is readily understandable that employees receiving tips directly from customers may agree to share tips when they believe that the employees with whom they share help them to serve the customers better and more fully and thus to obtain additional tips and sweeten the pot for everyone.

Id., at 954-55. *See also* Giuffre v. Marys Lake Lodge, LLC, 2012 U.S. Dist. LEXIS 140506 (D. Colo. Sept. 28, 2012) (Summary judgment granted in favor of defendant; tip pool including food expeditor found valid, "interaction with customers is not necessarily the sine qua non of the analysis"); Santana v. Rcsh Operations, 2012 U.S. Dist. LEXIS 17355 (S.D. Fla. Feb. 13, 2012); Arencibia v. 2401 Rest. Corp., 2011 U.S. Dist. LEXIS 146979 (D.D.C. Dec. 21, 2011).

## **CONCLUSION**

Based upon all of the evidence before this Court, Plaintiffs have failed to demonstrate that there are no material facts in dispute and therefore Plaintiffs' Motion for Summary Judgment must be denied.

WHEREFORE, Defendants request that this Court deny Plaintiffs' Motion for Summary Judgment, enter summary judgment in favor of the Defendants, and for any other such relief as this Court deems just and proper.

Dated this 6th day of November, 2012.

    Respectfully submitted,

    **ANDERSON LAW GROUP**

    */s/ Tracy Martinell Henry, Esq.*
    Tracy Martinell Henry, Esq.
    Florida Bar No.: 073865
    13577 Feather Sound Drive, Suite 670
    Clearwater, FL 33762
    Telephone: (727) 329-1999
    Facsimile: (727) 329-1499
    E-mail: thenry@floridalawpartners.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2012, I caused the foregoing Response in Objection to Plaintiffs' Motion for Summary Judgment to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice to all counsel of record:

    Christopher J. Whitelock, Esq.
    Chad E. Levy, Esq.
    300 Southeast Thirteenth Street
    Fort Lauderdale, FL 33316

    */s/ Tracy M. Henry, Esq.*
    Tracy M. Henry, Esq.
    Florida Bar No.: 073865