UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DOMENICK CUTUGNO and LINDA
CUTUGNO, an individual, on behalf of
themselves and all others similarly
situated

    Plaintiffs,

v.                                                    Case No: 5:11-CV-113-Oc-34PRL

SECOND CHANCE JAI ALAI LLC,
BRIAN MATTHEWS and JOSEPH
JAMES COFFEY

    Defendants.

## REPORT AND RECOMMENDATION[1]

This matter is before the Court on cross-motions for summary judgment, with supporting exhibits. (Docs. 53 & 55). Responses and replies have been filed (Docs. 59, 61, 64 & 65), and thus, the motions are fully briefed and ripe for review. The District Judge referred this matter to the undersigned for the preparation of a Report and Recommendation. *See* Doc. 66. For the reasons discussed below, the cross-motions for summary judgment (Docs. 53 & 55) should be **DENIED**.

### I. BACKGROUND

Plaintiffs, Domenick Cutugno and Linda Cutugno, both poker dealers employed by the Ocala Poker Room, which is part of Second Chance Jai Alai, LLC, bring the instant claim on

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

behalf of themselves and others similarly situated for alleged violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"). Plaintiffs have sued their employer, Second Chance Jai Alai, LLC ("Second Chance"); Joseph James Coffey, the corporate owner and officer of Second Chance; and Brian Matthew, who was involved in the daily operations of Second Chance.

The instant dispute arises from the Second Chance's claiming of a tip credit on its poker dealers, which permitted it to pay them less than the statutorily required minimum wage. Plaintiffs allege that, by requiring its poker dealers to share their tip pool with non-tipped employees such as floor managers/supervisors, tellers, the so-called "office manager," and vault personnel, Second Chance was not permitted to claim the tip credit and was therefore obligated to pay its dealers the full minimum wage. In their three-count Second Amended Complaint (Doc. 36), Plaintiffs seek unpaid minimum wages owed to them for the period in which they were paid pursuant to the tip credit, in addition to liquidated damages, and attorneys' fees and costs.

Both parties have filed motions for summary judgment focused on the validity of the tip pool. Plaintiff argues that the tip pool was invalidated by the inclusion of floor managers/supervisors, tellers, the so-called "office manager," and vault personnel, while Defendants contend that these employees were properly included. The parties both point to record evidence supporting their opposing positions; thus, underscoring the disputed issues of material fact that preclude entry of summary judgment in favor of either party.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party. *See Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III. DISCUSSION

Under the FLSA, an employer must pay its employee a minimum wage. *See* 29 U.S.C. §206(a). That wage may include the employee's tips. 29 U.S.C. §203(m). That is, an employer may pay an employee a cash wage below the minimum wage so long as the employer supplements the difference with the employee's tips; this is known as an employee taking a "tip credit." *Id*.[2]

In order to use a tip credit toward a tipped employee's minimum wage, an employer must satisfy two conditions: (1) the employee must be informed by the employee of the FLSA's tip provisions; and (2) the employee must be allowed to retain all tips which he/she receives, except

---

[2]While the employer may pay a wage below the minimum wage it must exceed $2.13. *See* 29 C.F.R. §531.50. Here, the dealers were paid an hourly wage of $4.19 plus tips minus 8% -- 4% to chip runners, vault personnel; and 4% to floor managers. As of July 1, 2010, 10% of tips went to chip runners and vault personnel. (Defendant's Answers to Plaintiff's First Set of Interrogatories #2, which are filed at Doc. 54-1 and Doc. 60-1).

in instances where pooling of tips is employed among other employees who "customarily and regularly receive tips." 29 U.S.C. §203(d).

Here, the parties do not dispute that Plaintiffs are tipped employees or that the employees were informed of the tip credit; rather, the dispute focuses on whether Defendants included in the tip pool employees who were not customarily and regularly tipped – i.e., floor managers/supervisors, tellers, the so-called "office manager," and vault personnel. If tipped employees are required to participate in a tip pool with any employee who does not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a "tip credit." *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 300 (6th Cir. 1998); *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3rd Cir. 1994). [3] This would entitle the employee to payment of minimum wage for all hours the employee had worked where the tip-pool was used. *Id.* "The requirements of the tip credit are strictly construed even if . . . [plaintiffs] actually earned more than minimum wage for every shift they worked. . ..." *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-cv-1753-Orl-37TBS, 2013 WL 230216, at *2 (M.D.Fla. January 22, 2013)(quoting *Garcia v. La Revise Assocs. LLC*, No. 08-cv-9356, 2011 WL 135009, at *5-6 (S.D.N.Y. Jan. 13, 2011)).[4]

---

[3] In their motion for summary judgment, Defendants also argue that the tip pool did not include any employers. The forced sharing of tips with management is also an illegal practice, regardless of whether the members of management are engaged in services that could be the subject of tipping. *Wacjman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, at *3 & n.1 (S.D.Fla. March 20, 2008). The theory is that employees who exercise substantial managerial authority over the day to day operations are functionally the "employers." Section 203(d) defines an "employer," as "any person acting directly or indirectly in the interest of an employer in relations to an employee. . .." 29 U.S.C §203(d). In determining who is an "employer," courts have looked at the following factors: the control of hiring and firing of employees; control of the manner in which work is performed; and the fixing of employee wages. *See Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802-03 (E.D.Ark. Sept. 28, 1990). However, because questions of fact remain as to whether floor managers/supervisors and vault managers were customarily and regularly tipped employees, the undersigned need not resolve this additional argument. Indeed, even if the undersigned concluded that they were not "employers," it would not resolve whether or not they were properly included in the tip pool.

[4] The Department of Labor Field Operations Handbook 12/9/88, Rev. 563, §30d04 notes that the occupations of waiters/waitresses, bellhops, counter personnel who serve customers, busboys/girls, and service bartenders have been recognized as eligible for participation in a mandatory tip pool; while the occupations of janitors, dishwashers, chefs or cooks, and laundry room attendants would not be eligible.

The FLSA defines a customarily and regularly tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t).[5] In determining whether an employee is a customarily tipped employee, courts have focused on the extent of the employee's customer interaction. *See Rubio* 2013 WL 230216, at *2; *Wacjman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, at *3 (S.D.Fla. March 20, 2008)(courts focus on whether the employee "performs important customer service functions, i.e., does the employee have more than *de minimis* service interaction with customers").

Here, although it is undisputed that floor managers/supervisors, tellers, the so-called "office manager," and vault personnel interact with the customers, there is conflicting, and in some cases insufficient evidence regarding the quantity and quality of their interactions. Accordingly, the undersigned finds that there are genuine issues of material fact as to whether these employees are customarily tipped employees.

### 1. *Floor Managers*[6]

Floor managers are "[i]n charge of all employees in the room. They are responsible for the smooth running of the poker room and they run the tournaments in the room." (Defendants' Answers to Interrogatories #16). Defendants offer evidence that floor managers also interact with customers in a number of ways, including distributing winnings to players at the table; resolving customer complaints with the dealers; and when needed, running chips to players and dealers, and seating customers. (*Id.*; Doc. 56-5, Deposition of C. Allen at pp. 25, 27; Deposition

---

[5] Under 29 CFR 531.54, an employee who receives tips from a tip-pool is permitted to count those received tips to establish whether they exceed $30 per month. However, courts have rejected the argument that an employee could become eligible for tip sharing simply by taking money from the tip pool. *See Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048 (GEL), 2006 WL 851749, at *14 & n.22 (S.D.N.Y. March 30, 2006).

[6] "Floor managers" and "floor supervisors" are used interchangeably.

of B. Matthews[7] at pp. 15, 30). Plaintiffs proffer affidavits in which they aver that floor managers have minimal to no interaction with the customers, other than resolving disputes that arise at the poker tables. (Doc. 58-1, Affidavit of D. Cutugno; Doc. 58-2, Affidavit of L. Cutugno). Plaintiffs, however, acknowledge seeing floor managers interact with customers, assist with seating, open tables, and assist chip runners. (Doc. 56-2, Deposition of L. Cutugno at p. 18-20; Doc. 56-1, Deposition of D. Cutugno at p. 24).

Although the record supports a finding that floor managers interact with customers, there is no evidence in the record as to what amount of a floor manager's shift is spent interacting with customers, nor is there competent evidence tending to show that the floor managers were engaged in services on the floor that would likely be the subject of tipping. Because a disputed issue of material fact exists regarding the quantity and quality of the interactions between floor managers and customers, the undersigned cannot resolve whether floor managers are customarily and regularly tipped employees.

Plaintiffs argue that based on *Wajcman v. Investment Corp. of Palm Beach*, Case No. 07-80912-CIV-HURLEY/HOPKINS (S.D. Fla.), floor managers cannot be included in a tip pool. While the jury in *Wajcman* ultimately concluded that the floor supervisors at the Palm Beach Kennel Club were not permitted to participate in the tip pool with poker dealers, the *Wajcman* court – much like this Court – denied summary judgment because there were disputed issues of material fact on the quantity and quality of supervisor-customer interaction on the cardroom floor. *Wajcman*, 2008 WL 783741, at * 5. Thus, the *Wajcman* case lends further support for the undersigned's conclusion that summary judgment should be denied.[8]

---

[7] Excerpts from the deposition of Brian Matthews are filed at Doc. 54-7 and Doc. 56-6.
[8] It is undisputed that Defendants changed their tip pool after the *Wajcman* case was decided. At his deposition, Mr. Matthews testified that if the Palm Beach facility lost the *Wajcman* case then the Ocala Poker Room would

*2. Tellers*

The tellers' primary function is to cash out customers by exchanging their chips for money. (Defendant's Answers to Interrogatories #16). Plaintiffs argue that because the tellers are locked behind a cage from the players and do not meet with players until they have completed playing and are cashing out, their interaction with customers is very limited. (Affidavit of Domenick Cutugno at ¶8). In response, Defendants point out that there is a tip box located at the tellers' windows, and thus, it stands to reason that tellers are tipped employees. (Deposition of B. Matthews at p. 96; Deposition of C. Allen at p. 28). While this is not an unreasonable argument, there is no evidence that tellers actually received tips in the tip boxes. In fact, there is no record evidence from any teller regarding the nature of their customer interaction.[9]

Contrary to Plaintiff's suggestion, the Department of Labor has not definitively determined that the position of teller cannot be included in a mandatory tip pool. In a ruling against two poker facilities located in Naples and Miami, the Department of Labor found that cashiers in those facilities were not eligible to participate in the tip pool. (Doc. 54-2, Dept. of Labor Report Case ID: 1519073 at p. 3). The Department of Labor did not discuss its finding in detail; simply noting that the cashiers worked "behind protective glass and had minimal contact with customers." That ruling, which was based on the specific details of those facilities, is not

---

"probably have to do something about [its] tip pool as well." (Deposition of B. Matthews at 57). Plaintiffs contend that the changes were made because Defendants "recognized the illegality of including floor supervisors in a tip-pool. . . ." Defendants, however, have offered the equally tenable position that although they thought floor supervisors were properly included, the changes were made to avoid lawsuits like the instant matter. Defendants failed to attach the Affidavit of Brian Matthews which purportedly supports this position.

[9] In response to Plaintiff's motion for summary judgment, Defendants state that "Domenick Cutugno testified that '[s]ometimes a player would cash out with a good size winning and feel they wanted to give the teller a tip, I guess.'" Defendants represent that this quotation was taken from Mr. Cutugno's deposition at page 16, however, this page of the transcript has not been filed with the Court. Likewise, in their reply memorandum, Defendants cite to the Affidavit of B. Matthews for the proposition that tellers are not behind protective glass, and that they interact with customers beyond just exchanging tips, but the Affidavit has not been filed with the Court.

dispositive of whether the tellers in this case are customarily and regularly tipped. *See Wajcman v. Investment Corp. of Palm Beach, No. 07-80912-Civ,* 2009 WL 465071, at *3 (S.D.Fla. Feb. 23, 2009)(order regarding motions in limine) (analysis must focus on the tellers' actual customer interaction; not the amount of customer interaction experienced by the occupation as a whole).[10]

Accordingly, based on this sparse record, the undersigned concludes that a disputed issue of material fact exists as to whether the tellers are customarily and regularly tipped employees.

### 3. Office Manager

While there is some dispute as to whether Susan Garrity had the title of "office manager,"[11] there is no dispute as to the type of work she performed." Ms. Garrity was hired to be a poker dealer but she ended up working in the office where she did scheduling, processed new hire paperwork, answered phone calls, did paperwork associated with the tip pool, and other general office duties. (Deposition of S. Garrity at pp. 7-8).[12] According to Mr. Matthews, she "pretty much did everything." (Deposition of B. Matthews at p. 53). Mr. Allen described Ms. Garrity as part of the "floor management" because she would come out on the floor if needed. (Deposition of C. Allen at p. 26).

Ms. Garrity generally worked in the office, however, she would help on the floor on busy promotional or tournament days or if they were short staffed by "mak[ing] sure that everything ran smoothly, that the customers were taken care of, everyone was doing their job, assisting the manager"; and filling in as a poker dealer if the poker room was short-handed. (Deposition of S.

---

[10] In the *Wajcman* case, cashiers/head cashiers were included in the tip pool and their inclusion apparently was not challenged. *See Wajcman*, 2008 WL 783741, at *1.

[11] Ms. Garrity testified that Brian Matthews gave her the job title of "office manager" because the State of Florida required her to have one. (Deposition of S. Garrity at pp. 15-16). While acknowledging that some people referred to Ms. Garrity as the office manager, Brian Matthews disputed giving her that job title and explained that Ms. Garrity did everything from scheduling to running chips to dealing to sitting at the podium and working on promotions. (Deposition of B. Matthews at p. 53).

[12] Excerpts from the deposition of Susan Garrity are filed at Doc. 54-6 and Doc. 56-4.

Garrity at pp. 12-13, 14, 38-39). Although Ms. Garrity performed customer service tasks, the quality and quantity of these customer interactions cannot be gleaned from the record. Indeed, while Ms. Garrity testified that starting in her second year there was approximately one busy promotional day per week (Deposition of S. Garrity at pp. 13-14), there is no evidence regarding how often she otherwise helped on the floor or interacted with customers. Based on this record, the undersigned cannot determine whether Ms. Garrity is a customarily and regularly tipped employee.

### 4. *Vault Personnel*

Although the vault personnel work in the vault counting money and doing deposits, there is evidence that they perform a much broader range of activities, including: overseeing tellers, chip runners and podium personnel; assisting the dealers "in anything that they might need"; replenishing money carts with chips and cash as needed; working as teller, podium person and chip runner as necessary, for breaks and fill ins; making a schedule for department; making payouts on all tournaments and jackpot winnings; and working the tip portion of payroll. (Defendants' Answers to Interrogatories #16; Deposition of V. Pernek at pp. 13, 15, 22-23;[13] Deposition of B. Matthews at pp. 41, 45-47).

In support of their position that vault personnel stay in the vault and have no customer interaction, Plaintiffs offer their own affidavits. (Affidavit of D. Cutugno at ¶11; Affidavit of L. Cutugno at ¶11). Although Plaintiffs aver that the vault personnel had "little to no" customer interaction, Mr. Cutugno concedes that he has no first-hand knowledge regarding the duties of the vault personnel. (Deposition of D. Cutugno at pp. 17-18). Ms. Perneck, the vault manager, testified that she is always "out and about" and she interacts with the poker players "[a]ll the

---

[13] Excerpts from the deposition of Vicki Pernek are filed at Doc. 54-8 and 56-3.

time. All the time. When they come in, when they come to the teller window, when they're at the podium, when they're in the hallway they'll come up and talk to you. A lot of them I know on a first name basis. And sometimes they come looking for you depending on what their issues are." (Deposition of V. Pernek at pp. 15, 52-53). Mr. Matthews testified that due to the smaller size of the Ocala Poker Room, everyone pitched in and vault supervisors, chip runners, and floor supervisors "all do pretty much the same thing." (Deposition of B. Matthews at pp. 39, 42). Because a disputed issue of material fact exists as to the quantity and quality of customer interaction, the undersigned cannot determine whether the vault personnel are customarily and regularly tipped employees.[14]

### IV. RECOMMENDATION

Because disputed issues of fact exist as to whether floor managers/supervisors, tellers, the so-called "office manager," and vault personnel are "tipped employees" within the meaning of the FLSA, the contingent issue as to the validity of their participation in the tip pool cannot be resolved as a matter of law. Accordingly, it is respectfully **RECOMMENDED** that the parties' cross-motions for summary judgment should be **DENIED**.

Recommended in Ocala, Florida on February 15, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[14] In their reply memorandum, Defendants represent that Kathleen Danielson and other vault supervisors testified that they worked at the teller windows, the podium, and running chips, and interacted with customers regularly. (Doc. 65 at p.4). Defendants, however, never filed these deposition transcripts with the Court.